# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00269-CR

**Daniel Lopez Cardoza, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. D-1-DC-12-201877, THE HONORABLE DAVID CRAIN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Daniel Lopez Cardoza of indecency with a child by sexual contact and aggravated sexual assault of a child for engaging in certain sexual acts with his girlfriend's six-year-old daughter.[1] *See* Tex. Penal Code §§ 22.021(a)(1)(B)(iii), (2)(B), 21.11(a)(1). The jury assessed appellant's punishment at confinement for 15 years in the Texas Department of Criminal Justice for the aggravated sexual assault and 5 years for the indecency. *See id.* § 12.32, 12.33. In a single point of error on appeal, appellant complains of jury charge error in the punishment charge. Finding no reversible error, we affirm the trial court's judgment of conviction for indecency with a child by contact. To correct non-reversible error in the judgment of conviction

---

[1] The record reflects that on one night in April 2012, appellant touched the genitals of the six-year-old with his hand and then performed oral sex on her. Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

for aggravated sexual assault of a child, we modify that judgment and, as modified, affirm the trial court's judgment of conviction for aggravated sexual assault of a child.

## DISCUSSION

### Jury Charge Error

In his sole point of error, appellant asserts that the trial court erred by giving the jury the wrong parole instruction in the punishment charge. He further argues that this erroneous instruction caused him egregious harm.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The trial court must charge the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense charged. *See* Tex. Code Crim. Proc. art. 36.14; *see also Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995) (because jury charge instructs jury on law applicable to case, it must contain accurate statement of law and set out all essential elements of offense). The judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Section 4 of article 37.07 of the Texas Code of Criminal Procedure requires that the jury instructions in the punishment charge contain information on parole law. *See* Tex. Code Crim.

Proc. art. 37.07, § 4; *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). In most cases, when a defendant is found guilty of a felony offense and the jury assesses punishment, the trial court is statutorily mandated to include the prescribed parole and good conduct time instruction in its charge. *See* Tex. Code Crim. Proc. art. 37.07, § 4; *Stewart v. State*, 293 S.W.3d 853, 856 (Tex. App.—Texarkana 2009, pet. ref'd). This instruction explains generally the concepts of good conduct time and parole, states the defendant's eligibility for parole in terms of calendar years or sentence portion, and states that no one can predict whether parole or good time might be applied to the defendant. *See* Tex. Code Crim. Proc. art. 37.07, § 4(a)–(c); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). On appeal, the reviewing court presumes the jury followed these instructions as given. *Luquis*, 72 S.W.3d at 366.

In this case, the jury returned convictions for aggravated sexual assault of a child and indecency with a child by sexual contact. These offenses are among those listed in section 3g of article 42.12 of the Code of Criminal Procedure, commonly referred to as "3g offenses."[2] *See* Tex. Code Crim. Proc. art. 42.12, § 3g(a)(1)(C), (E). Consequently, the jury should have been charged in accordance with section 4(a) of article 37.07 of the Code of Criminal Procedure, which provides:

---

[2] A "3g offense" refers to a felony enumerated in article 42.12, § 3g(a)(1) of the Texas Code of Criminal Procedure or a felony that involves an affirmative deadly weapon finding under article 42.12, § 3g(a)(2) reflecting that the defendant used or exhibited a deadly weapon during the commission of the offense. *See* Tex. Code Crim. Proc. art. 42.12, § 3g(a)(1)–(2); Tex. Penal Code § 1.07(17). Such a felony carries certain consequences due to the serious nature of the offense. First, a person convicted of a 3g felony offense is not eligible for community supervision from the judge. *See* Tex. Code Crim. Proc. art. 42.12, § 3g(a)(1). In addition, some 3g offenses render a defendant ineligible for community supervision from a jury as well. *See id.*, § 4(d). Further, a conviction for a 3g offense affects a convicted defendant's parole eligibility. *See* Tex. Gov't Code § 508.145(d)(1) (inmate must serve one half of sentence imposed or 30 calendar years actual time before becoming parole eligible).

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

*Id.* art. 37.07, § 4(a). Instead, the jury was charged as follows:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-half of the sentences imposed. Eligibility for parole does not guarantee that parole will be granted.

(Emphasis added.) This instruction—erroneously adding the italicized language [3]—is not found in the Code of Criminal Procedure. Thus, the parole eligibility instruction given—indicating that good conduct time would be a factor in determining appellant's eligibility for parole—was erroneous since it did not comply with article 37.07, § 4(a).

The record reflects, and appellant concedes in his brief, that he failed to object to the erroneous parole eligibility instruction at trial. Thus, the error does not call for a reversal of his convictions unless appellant was egregiously harmed by that incorrect instruction. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If the error was not objected to, it must be

---

[3] The paragraph also omits certain statutory language at the end of the first sentence:

. . . or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole.

However, appellant does not complain about the omitted language.

4

'fundamental' and requires reversal . . . only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g))). Any harm inflicted by the erroneous charge must be "assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174; *see Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm."). Jury charge error is egregiously harmful if it "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *see Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 777. Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *Taylor*, 332 S.W.3d at 489; *see Arrington*, 451 S.W.3d at 840; *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

Beginning with the punishment charge itself, we observe that in addition to the erroneous eligibility instruction, the jury was given the requisite statutory instructions explaining good conduct time and parole:

Under the law applicable to these offenses, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct,

5

> prison authorities may also take away all or part of any good conduct time earned by the prisoner.

> . . .

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

*See* Tex. Code Crim. Proc. art. 37.07, § 4(a). The jury was also given instructions that we view as mitigating or curative in the paragraphs immediately following the erroneous instruction:

> . . . It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See id.*; *Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004).

As a whole, the trial court's parole instructions informed the jury that appellant may be released from a prison sentence early because of good conduct time or parole, but not that he necessarily would, and that one cannot predict how parole law and good conduct time might be applied to appellant. Further, the jury was explicitly instructed that although it could consider, in general, the existence of parole and good conduct time, it could not apply that to appellant specifically. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006) (parole instruction that contained standard curative language admonishing jury not to consider extent to which parole law might be applied to defendant was factor mitigating against finding of egregious harm). We presume

6

that the jurors understood and followed the court's instructions in the jury charge absent evidence to the contrary. *See Taylor*, 332 S.W.3d at 492; *Luquis*, 72 S.W.3d at 366. There is no evidence in the record to rebut the presumption that the jury followed the instruction not to consider how good conduct time or the parole law might be applied to appellant. Nothing in this record suggests that the jurors discussed, considered, or tried to apply—contrary to the judge's admonition—what they were told about good conduct time and parole. For example, the jury did not send out any notes or questions during punishment deliberations expressing confusion about the parole instruction, indicating the possible application of good conduct time or the parole law to appellant, or showing attempts to calculate appellant's parole eligibility. We conclude that consideration of the entirety of the jury charge weighs against a finding of egregious harm.

With respect to the evidence in this case, the record reflects that the victim's mother, J.C., was dating appellant, and that he lived with her and her family in a duplex. One night J.C. walked into her bedroom and saw appellant performing oral sex on her six-year-old daughter. She immediately confronted him, hitting him and punching him, and he admitted that he deserved to be hit because what he had done was wrong. During the subsequent police investigation, appellant was interviewed by a detective. A video recording of the interview and a transcript translating it into English were admitted into evidence at trial. During the interview, appellant admitted that he touched the victim on her "sexual part"—rubbing it with his left hand for "about three minutes," and that he also kissed the victim's "sexual part"—touching her "sexual part" with his tongue, moving it up and down, but "on the outside only." In the interview, he blamed his conduct on the victim's provocative behavior and insinuated that she had seduced him. After the jury convicted appellant,

7

J.C. testified during the punishment phase about the impact appellant's sexual abuse had on her daughter—including negative changes in her demeanor, social interactions with friends, and performance in school—and the entire family. Appellant also testified during punishment, saying he accepted that he committed "a grave mistake" and asking the victim's mother for forgiveness for "this error." On cross examination, he admitted his guilt to the offenses for which he was convicted. In trying to explain why he sexually abused the victim, appellant testified that he was drunk and high on drugs (cocaine). After reviewing the evidence in the record, we conclude that the state of the evidence weighs against a finding of egregious harm.

Concerning jury argument, neither side referenced parole, good conduct time, or parole eligibility during closing argument. Thus, the arguments of counsel weigh against a finding of egregious harm.

Finally, we consider the fact that the jury returned relatively low sentences to be relevant information in evaluating harm. For the aggravated sexual assault of a child, appellant was facing incarceration for a minimum of five years up to 99 years or life. The jury assessed a sentence of 15 years, a sentence closer to the minimum than the maximum. For the indecency with a child, appellant's exposure to incarceration was a minimum of two years up to 20 years. The jury assessed a sentence of five years, also a sentence closer to the minimum than the maximum. We conclude that the relatively low sentences assessed by the jury—notwithstanding the fact that the record demonstrated that appellant's relationship with the victim was akin to a father-daughter relationship—weigh against a finding of egregious harm.

In conclusion, the factors discussed above militate against a finding of egregious harm. First, the jury charge contained curative or mitigating instructions. The parole instruction explained the possibility, not certainty, that appellant's prison sentences may be reduced by good conduct time or parole eligibility and, further, clearly admonished the jury not to consider the extent to which the parole law or good conduct time might be applied to appellant. Second, as noted in our discussion above, the evidence relating to guilt-innocence was exceptionally strong. The jury could have viewed appellant's testimony during punishment—referring to his criminal conduct as "a mistake" or "error" and blaming alcohol, drugs, and (at times) the victim for his behavior—as self-serving attempts to minimize his conduct and an indication that he did not accept responsibility for his deplorable actions against a young child who called him "Daddy." Third, neither parole or parole eligibility were mentioned by either party during closing arguments. Further, there is no evidence in the record that the jury attempted to apply the parole laws or good conduct time when assessing appellant's sentences. Finally, the jury ultimately assessed relatively low sentences for the offenses for which appellant was convicted.

On this record, we cannot conclude that the punishment charge error affected the very basis of the case, deprived appellant of a valuable right, or vitally affected the defensive theory. Accordingly, after reviewing the record and considering the relevant factors, we hold that the erroneous parole instruction did not egregiously harm appellant. We overrule appellant's sole point of error.

9

**Clerical Error in Judgment**

On review of the record, however, we observe that the written judgment of conviction for aggravated sexual assault of a child contains a clerical error. The judgment of conviction states that the "Statute for Offense" is "22.021(a)(2)(B) Penal Code." The statute for the aggravated sexual assault of a child offense as alleged in the indictment here, however, is section 22.021(a)(1)(B)(iii), (2)(B) of the Penal Code. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, because the necessary information is available here, we modify the incorrect judgment to reflect the correct Penal Code section.

**CONCLUSION**

Having concluded that the erroneous parole instruction in the punishment charge did not egregiously harm appellant, we affirm the trial court's judgment of conviction for indecency with a child by contact, modify the trial court's judgment of conviction for aggravated sexual assault of a child as noted above, and affirm that judgment as modified.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed; Modified and, as Modified, Affirmed

Filed: April 9, 2015

Do Not Publish

10